**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

TREDITH H. KNOWLIN,
          Appellant,

      v.

DEPARTMENT OF VETERANS
    AFFAIRS,
          Agency.

DOCKET NUMBER
DC-0752-17-0703-I-1

DATE: February 15, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Allison B. Eddy</u>, Esquire, Virginia Beach, Virginia, for the appellant.

<u>Amanda E. Shaw</u>, Esquire, Roanoke, Virginia, for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member
Member Leavitt issues a separate dissenting opinion.

## FINAL ORDER

¶1 The appellant has filed a petition for review of the initial decision, which sustained her removal and found that she failed to prove her affirmative defenses. For the reasons discussed below, we GRANT the appellant's petition for review,

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

REVERSE the initial decision in part to find that the agency violated her due process rights, AFFIRM the portion of the initial decision that found that she failed to prove her equal employment opportunity (EEO) retaliation claim, and DO NOT SUSTAIN the appellant's removal.

## BACKGROUND

¶2 The appellant was employed as a GS-11 Military Services Coordinator (MSC) at the Veterans Service Center of the Veterans Benefits Administration Roanoke Regional Office and worked at the Portsmouth Naval Hospital. Initial Appeal File (IAF), Tab 4 at 9. According to the appellant, on March 16, 2017, a coworker recounted an incident to her in which he interacted with a female service member when he was enlisted in the U.S. Navy. IAF, Tab 21 at 53. In describing this incident to the appellant, he referred to the female service member's sexual orientation in derogatory terms and demonstrated her behavior "by grabbing himself twice." *Id.* The agency credited the appellant's statements, and the appellant's supervisor issued the coworker a letter of reprimand for sexual harassment on May 12, 2017. *Id.* at 42, 50-52.

¶3 As an MSC, the appellant was responsible for assisting service members being separated for medical reasons. IAF, Tab 4 at 54-55. Between March 7 and 23, 2017, she met with at least three service members regarding their medical separations. *Id.* at 95-96. All three reported that their interactions with her were brusque, hostile, and disrespectful. *Id.* at 98, 100, 102-103, 117-121, 125-126. On June 12, 2017, the agency proposed the appellant's removal for "disrespectful, insulting, abusive, insolent, or obscene language or conduct to or about . . . other employees, patients, or visitors" based on these events. *Id.* at 95-97. The proposal notice indicated that the evidence file supporting the proposal was available for the appellant's review if she desired. *Id.* at 96. The notice did not

include a discussion of the *Douglas*[2] factors. *Id.* at 95-97. After the appellant submitted her written reply, *id.* at 13-94, the deciding official issued a final decision sustaining the charge and removing her from Federal service, effective July 22, 2017, *id.* at 10-12. In the decision, the deciding official expressly stated that the decision "takes into consideration the aggravating factors considered by the proposing official in determining an appropriate penalty." *Id.* at 10.

¶4 On August 1, 2017, the appellant filed the instant appeal with the Board. IAF, Tab 1. In her appeal, she denied the charge and specifications, alleged that the removal was in retaliation for her complaint to her supervisor that her coworker sexually harassed her, claimed that the agency violated her due process rights when the deciding official considered the proposing official's *Douglas* factors analysis without informing her and by failing to provide sufficient detail for one of the specifications, and asserted that she received a disparate penalty. IAF, Tab 20 at 18.

¶5 After holding the requested hearing, the administrative judge issued an initial decision finding that the agency proved the charge by preponderant evidence, that the appellant failed to prove her affirmative defenses of EEO retaliation and due process violations, and that there was no evidence that she was subjected to a disparate penalty. IAF, Tab 48, Initial Decision (ID) at 3-15. The appellant has filed a petition for review, and the agency has responded. Petition for Review (PFR) File, Tabs 1, 3.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶6 In the appellant's petition for review, she challenges the administrative judge's credibility findings regarding the agency's witnesses. PFR File, Tab 1 at 18-27. She argues that the administrative judge erred in finding that she failed to prove that her removal was issued in retaliation for her protected EEO activity

---

[2] *See Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981) (providing a nonexhaustive list of factors relevant to a determination of a reasonable penalty).

of reporting sexual harassment and that the agency violated her due process rights. *Id.* at 4, 11-18. She also renews her claim that she received a disparate penalty from other employees who engaged in similar misconduct. *Id.* at 27-29. As discussed below, we find that the agency violated the appellant's due process rights. Because we reverse her removal on due process grounds, we decline to address her arguments concerning the charges except as necessary to address her EEO retaliation affirmative defense. We also do not address her disparate penalty claim. We agree with the administrative judge that the appellant did not meet her burden to prove her EEO claim.

The agency's removal process violated the appellant's due process rights.

¶7        The essential requirements of procedural due process are prior notice of the charges against the employee and a meaningful opportunity to respond to those charges. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985). The appellant argued below and reasserts on review that the agency violated her due process rights when it failed to provide sufficient detail of the allegations set forth in one of the specifications and when the deciding official considered the proposing official's *Douglas* factors analysis and discussion of relevant aggravating factors. IAF, Tab 20 at 18; PFR File, Tab 1 at 4, 11-16. The administrative judge did not address these due process arguments. We agree with the appellant that the deciding official considered an aggravating factor of which the appellant did not have notice and an opportunity to respond.

¶8        The same day that the proposed removal was issued, the proposing official completed a *Douglas* factors worksheet. IAF, Tab 5 at 6-12. In the worksheet, under the "notoriety of the offense or its impact upon the reputation of the [a]gency," she wrote that the appellant's behavior "could have a negative impact" on the agency and those stationed at the appellant's location. *Id.* at 8-9. She further stated that if the behavior continued, "it could also be chronicled in the local media which would lead to additional scrutiny on the agency." *Id.* at 9. It appears undisputed that the agency did not provide the appellant with the

proposing official's *Douglas* factors analysis and that the deciding official considered the analysis, although it is not clear from the record how he received the worksheet. IAF, Tab 4 at 10; Tab 46, Hearing Compact Disc, Day 1 (HCD 1) (testimony of the deciding official); Tab 47, Hearing Compact Disc, Day 2 (HCD 2) (testimony of the appellant). It is also undisputed that the deciding official considered the notoriety of the offense and the possibility that it could produce negative publicity for the agency as an aggravating factor in his decision to remove the appellant. HCD 1 (testimony of the deciding official).

¶9      We find that the consideration of the potential notoriety of the offense was an improper ex parte communication. Regardless of whether the deciding official relied on the proposing official's analysis of the notoriety factor or he considered it separately on his own prior to issuing the decision, the agency was required to inform the appellant that it was considering the notoriety factor as an aggravating one before it imposed the removal. *See Jenkins v. Environmental Protection Agency*, 118 M.S.P.R. 161, ¶ 10 (2012) (stating that when determining whether a due process violation has occurred, there is no basis for distinguishing between ex parte information provided to the deciding official and information personally known by the deciding official if the information was considered in reaching the decision and not previously disclosed to the appellant); *Lopes v. Department of the Navy*, 116 M.S.P.R. 470, ¶ 10 (2011) (observing that when a deciding official considers either ex parte information provided to him or information personally already known to him, the employee is no longer on notice of portions of the evidence relied upon by the agency in imposing the penalty).

¶10     When an employee has not been given notice of an aggravating factor supporting an enhanced penalty, as was the case here, an ex parte communication with the deciding official regarding such factors may constitute a constitutional due process violation. *Ward v. U.S. Postal Service*, 634 F.3d 1274, 1280 (Fed. Cir. 2011). However, "not every ex parte communication" rises to the level of a due process violation; "[o]nly [those] that introduce new and material

information" do. *Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1376-77 (Fed. Cir. 1999). In deciding whether new and material information has been introduced by means of ex parte communications, the Board should consider factors such as "whether the ex parte communication merely introduces 'cumulative' information or new information; whether the employee knew of the information and had a chance to respond to it; and whether the ex parte communications were of the type likely to result in undue pressure upon the deciding official to rule in a particular manner." *Id.* at 1377; *see Ward*, 634 F.3d at 1280 (instructing the Board to apply *Stone* to determine if "new and material information" was introduced by the deciding official to enhance the penalty). The main concern is that an appellant have notice and an opportunity to respond to information "so substantial and so likely to cause prejudice" that the failure to provide it amounts to a deprivation of her property interest in continued employment. *Stone*, 179 F.3d at 1374-75, 77.

¶11 Regarding the first factor, the agency argues that the notoriety of the offense is not new information because it "flowed naturally from the [c]harge" and did not provide any additional information that was not already apparent from the proposal and evidence file. PFR File, Tab 3 at 11. We disagree. The deciding official's consideration that the appellant's misconduct "could" have a negative impact and lead to additional scrutiny on the agency was purely speculative. Nearly any misconduct by an employee has the *potential* for notoriety. In the absence of actual notoriety in the media or in the community, there was no reason to think that this counterfactual scenario should have been of special concern to the agency in this case. As such, the appellant could not have known that the agency would rely on the notoriety of the offense as an aggravating factor or that the deciding official would construe the factor in such a way. *See Jenkins*, 118 M.S.P.R. 161, ¶ 12 (finding the deciding official's reliance on the recommended penalties from the agency's table of penalties for a charge other than those set forth in the proposal notice constituted new information

because the appellant was not aware that the proposed penalty would be considered that way). Therefore, the deciding official's reliance on the notoriety factor cannot fairly be deemed cumulative or immaterial to the final decision. *See id.*

¶12    Regarding the second *Stone* factor, it is undisputed that the appellant did not have an opportunity to respond to the agency's reliance on the notoriety factor. In fact, it is unclear from the record when she even became aware of which factors the agency was relying upon for an aggravated penalty. Although the proposing official informed the appellant that the agency was concerned about an internal complaint lodged by one of the affected service members, IAF, Tab 4 at 96, this is not the same thing as the agency's fear of possible future media attention. Regarding the third *Stone* factor, it is also undisputed that the deciding official considered the notoriety factor. He testified that the notoriety of the appellant's misconduct was an important factor in his decision and that the proposing official's analysis of that factor "did not go far enough."[3] HCD 1 (testimony of the deciding official). However, there is no evidence in the record that the information resulted in undue pressure on him to remove the appellant. Nonetheless, our reviewing court has emphasized that whether the additional information was of the type likely to result in undue pressure is only one factor and is not the ultimate inquiry. *Ward*, 634 F.3d at 1280 n.2. Specifically, the court recognized that "the lack of such undue pressure may be less relevant to determining when the ex parte communications deprived the employee of due process where . . . the [d]eciding [o]fficial admits that the ex parte communications influenced his penalty determination." *Id.* Therefore, while no

---

[3] Even if the dissent is correct that the deciding official considered the notoriety of the offense independently of the proposing official's analysis, the due process problem would remain. A deciding official is not permitted to consider aggravating factors that the employee was not warned about in advance, regardless of whether any ex parte communication was involved. *See Richardson v. Department of Veterans Affairs*, 2023 MSPB 1, ¶ 32.

clear evidence of undue pressure exists, the deciding official's testimony is clear evidence of the materiality of the notoriety of the offense in his decision to remove the appellant.

¶13    Based on the foregoing, we find that the deciding official's consideration of the notoriety factor was so substantial and likely to cause prejudice that the agency's failure to notify the appellant in advance violated her right to due process. *See Gray v. Department of Defense*, 116 M.S.P.R. 461, ¶¶ 9-13 (2011) (finding a due process violation when the deciding official considered the appellant's likely loss of eligibility for a sensitive position as an aggravating factor without notifying the appellant). Accordingly, we reverse the initial decision in this regard and do not sustain the appellant's removal. The agency may not remove the appellant unless and until she is afforded due process. *Id.*, ¶ 12. In light of our findings here, we find it unnecessary to reach the appellant's additional due process claim that one of the agency's specifications was vague.

The appellant failed to show that her EEO activity was a motivating factor in her removal.

¶14    Even though we reverse the agency's removal action on due process grounds, we must still address the appellant's EEO retaliation claim because of the potential for damages. IAF, Tab 6 at 4-5; *see Hess v. U.S. Postal Service*, 124 M.S.P.R. 40, ¶¶ 8, 18-20 (2016) (finding that when the appellant has been returned to the status quo ante and still has an outstanding claim of discrimination for which she has requested compensatory damages, her appeal is not moot and the Board must adjudicate the affirmative defense).

¶15    The appellant claims that her removal was in retaliation for complaining of her coworker's March 16, 2017 sexual harassment. PFR File, Tab 1 at 16-18; IAF, Tab 1 at 6, Tab 20 at 18. When an appellant asserts an affirmative defense of discrimination or retaliation for EEO activity protected by Title VII, she bears the burden to prove by preponderant evidence that the prohibited consideration was a motivating factor in the contested personnel action. *Savage v. Department*

*of the Army*, [122 M.S.P.R. 612](), ¶ 51 (2015), *overruled in part by Pridgen v. Office of Management and Budget*, [2022 MSPB 31](), ¶¶ 23-25. If the appellant meets her burden, the burden then shifts to the agency to prove by preponderant evidence that it would have taken the personnel action regardless of the discriminatory or retaliatory motive. *Id.*, ¶¶ 48-49, 51. The Board has clarified that evidence of discrimination or retaliation should not be sorted into piles of "direct" and "indirect" evidence, and emphasized that the evidence should be considered as a whole in determining if an appellant satisfied her burden. *Gardner v. Department of Veterans Affairs*, [123 M.S.P.R. 647](), ¶¶ 28-31 (2016), *clarified by Pridgen*, [2022 MSPB 31](), ¶¶ 23-24.

¶16    Here, the administrative judge found that the appellant failed to explain how her complaint had any connection to her discipline. ID at 13. Although the administrative judge informed the appellant of the "motivating factor" causation standard in the order and summary of the prehearing conference, IAF, Tab 45 at 2-4, she did not apply that standard in her analysis in the initial decision, finding only that the appellant failed to show a "causal connection," ID at 13. To clarify, as explained below, we find that the appellant failed to show that her EEO activity was a motivating factor in the agency's decision to remove her.

¶17    The record shows that on March 20, 2017, the appellant reported alleged sexual harassment by a coworker on March 16, 2017. IAF, Tab 20 at 50-52. It is undisputed that the coworker was one of the agency employees named as a witness in specifications B and D, which both concern the appellant's behavior while interacting with a service member on March 15, 2017. IAF, Tab 4 at 95-96; PFR File, Tab 1 at 16-17; HCD 2 (testimony of the coworker). The appellant claims that no agency employee, including the coworker, reported or submitted any statements regarding her alleged behavior during the March 15, 2017 interaction with the service member until after she filed the sexual harassment complaint against the coworker on March 20, 2017. PFR File, Tab 1 at 17. She

claims that, due to the timing of the sexual harassment complaint, the coworker and other agency witnesses had motive to lie. *Id.* at 22-23.

¶18 The administrative judge considered this argument but ultimately credited the service member's and agency witnesses' testimony, which was largely consistent with the allegations in the specifications, thereby discounting the appellant's assertion that her coworker was lying about the incident because she had filed a sexual harassment complaint against him. ID at 13. Specifically, she found that the witnesses to the March 15, 2017 incident all testified in a clear and straightforward manner, that they had no motive to lie or exaggerate, that their statements were corroborated by other witnesses, and that their testimony matched prior statements they had made. ID at 4-9. Because these credibility determinations were explicitly based on the demeanor of witnesses testifying at the hearing, as well as other appropriate credibility considerations, we defer to them. *See Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002) (providing that the Board must give deference to an administrative judge's credibility determinations when they are based explicitly or implicitly on the observations of witnesses testifying at hearing and may overturn such determinations only when it has "sufficiently sound" reasons for doing so); *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987) (providing factors relevant to credibility findings).

¶19 Further, although the deciding official testified that he was aware of the sexual harassment complaint and effectuated the removal within 4 months, he testified that his knowledge of the complaint did not affect his impressions of the evidence in the appellant's case or his decision to remove her. HCD 1 (testimony of the deciding official). Specifically, he stated that he had "no desire" to protect the subject of the sexual harassment complaint, that he would have removed the appellant "irrespective" of the complaint, and that it had "nothing to do with" the removal. *Id.* The administrative judge found the deciding official to be a "credible, persuasive witness," ID at 15, and we defer to that finding, *see Haebe*,

288 F.3d at 1301. Aside from temporal proximity, the appellant has not pointed to any evidence suggesting that the deciding official had a motive to retaliate against her. Accordingly, we find that the appellant failed to prove that her EEO activity was a motivating factor in her removal.[4]

¶20 Based on the foregoing, we grant the appellant's petition for review and reverse the initial decision. Because we reverse the initial decision on due process grounds, we do not address her remaining arguments on review. *See Solis v. Department of Justice*, 117 M.S.P.R. 458, ¶ 10 (2012) (declining to consider any of the appellant's other arguments after reversing an agency removal action on due process grounds); *Lopes*, 116 M.S.P.R. 470, ¶ 14 n.4 (making no findings with respect to the merits of the agency's charges after reversing the appellant's removal based on a due process violation).

## ORDER

¶21 We ORDER the agency to CANCEL the appellant's removal and to restore her effective July 22, 2017. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶22 We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

---

[4] Because the appellant here failed to prove her initial burden that a prohibited factor played any part in the agency's decision, we do not reach the question of whether retaliation was a but-for cause of that decision.

¶23    We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order.  The appellant, if not notified, should ask the agency about its progress.  *See* 5 C.F.R. § 1201.181(b).

¶24    No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order.  The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency.  5 C.F.R. § 1201.182(a).

¶25    For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached.  The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

### NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set forth at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION.

You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

## NOTICE OF APPEAL RIGHTS[5]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

---

[5] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. \_\_\_\_ , 137 S. Ct. 1975 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of

discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations<br>
Equal Employment Opportunity Commission<br>
P.O. Box 77960<br>
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations<br>
Equal Employment Opportunity Commission<br>
131 M Street, N.E.<br>
Suite 5SW12G<br>
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or

other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[6] The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

---

[6] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below: http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                                /s/ for
                                             Jennifer Everling
                                             Acting Clerk of the Board
Washington, D.C.



**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled). **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards. **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐ 7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63).
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion.  Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.

¶1    For the reasons explained below, I respectfully dissent from the majority opinion in this case.

¶2    The deciding official in this case received ex parte information from the proposing official, a *Douglas* factors worksheet that was not provided to the appellant.  The majority opinion finds that the ex parte information violated the appellant's constitutional due process rights.  The opinion focuses exclusively on a section of the worksheet dealing with the "notoriety of the offense or its impact upon the reputation of the [a]gency."  The proposing official wrote on the worksheet:

> This type of behavior could have a negative impact on the Department of Veterans Affairs and the employees stationed at the Naval Medical Center Portsmouth.  We are located there in a collaborative program with the Department of the Navy as part of the Integrated Disability Evaluation System program.  If this behavior continued it could also be chronicled in the local media[,] which would lead to additional scrutiny on the agency.  The behavior exhibited is not acceptable as this is a customer service oriented position.

Initial Appeal File (IAF), Tab 5 at 8-9.

¶3    As the majority opinion notes, the U.S. Court of Appeals for the Federal Circuit reasoned in *Stone v. Federal Deposit Insurance Corporation*, [179 F.3d 1368](#) (Fed. Cir. 1999):  "[N]ot every *ex parte* communication is a procedural defect so substantial and so likely to cause prejudice that it undermines the due process guarantee and entitles the claimant to an entirely new administrative proceeding."  *Id*. at 1376-77.  Rather, the standard the Federal Circuit articulated is whether ex parte communications "introduce new and material information to

the deciding official[.]" *Id.* at 1377. This applies equally to ex parte determinations relating to the charge itself and ex parte communications relating to the penalty. *Ward v. U.S. Postal Service*, 634 F.3d 1274, 1280 (Fed. Cir. 2011). To determine whether information is "new and material," the court stated in *Stone*:

> Among the factors that will be useful for the Board to weigh are: whether the *ex parte* communication merely introduces "cumulative" information or new information; whether the employee knew of the error and had a chance to respond to it; and whether the *ex parte* communications were of the type likely to result in undue pressure upon the deciding official to rule in a particular manner.

*Stone*, 179 F.3d at 1377.

¶4        Regarding the first of these factors here, I agree with the agency that the proposing official's four sentences about the notoriety of the offense introduced only cumulative information because they "flowed naturally from the [c]harge" and did not provide any additional information that was not already apparent from the proposal and evidence file. Petition for Review File, Tab 3 at 11. The majority opinion declares, "The deciding official's consideration that an appellant's misconduct 'could' have a negative impact and lead to additional scrutiny on the agency was purely speculative." *Supra*. Yet this conclusion required no leap of logic for either the appellant or the deciding official, given that the notice of proposed removal itself highlighted negative attention the agency had already experienced because of the appellant's actions: "As a result of your treatment of [a Navy SEAL who deployed twice to a combat zone], a complaint was made to the Office of the Secretary of the VA about your behavior, and your supervisors had to respond." IAF, Tab 1 at 10. A second service member's fears of retaliation, as recounted in the notice of proposed removal, practically beg for scrutiny of the agency: "The service member stated he fears his claims for disability will have retribution in the VA process now because of the treatment he received." *Id.* at 9. While anticipating future consequences is

always speculative, that continued mistreatment of suffering service members could attract further negative attention—including in the media—seems obvious.

¶5     The second factor the court in *Stone* directed the Board to consider was whether the employee knew of the error and had a chance to respond to it. Acknowledging that the appellant did not learn the proposing official conducted a *Douglas* factors analysis until she received the notice of removal, the appellant clearly had the opportunity to respond to the charge that her actions reflected negatively on the Department of Veterans Affairs and employees stationed at Naval Medical Center Portsmouth. As the notice of proposed removal stated, "As a Military Services Coordinator, your performance standards require you to communicate in a courteous manner with Veteran/service member customers during the personal or telephone interview process. This conduct toward a service member cannot be tolerated[.]" IAF, Tab 1 at 9-10. I do not see how the appellant could have further responded regarding the notoriety of the offense beyond the response she provided.

¶6     Even if new, ex parte information may or may not be material. While *Stone* was not exhaustive regarding the factors the Board might consider, the third and final factor goes to the materiality of the ex parte information: were the ex parte communications of the type likely to result in undue pressure upon the deciding official to rule in a particular manner? *Stone*, 179 F.3d at 1377. The majority opinion acknowledges there is no such evidence in the record. *Supra.* Instead, the opinion pivots to *Ward*, where the court stated: "[T]he lack of such undue pressure may be less relevant to determining when the *ex parte* communications deprived the employee of due process where . . . the [d]eciding [o]fficial admits that the *ex parte* communications influenced his penalty determination." *Ward*, 634 F.3d at 1280 n.2. The court in *Ward* continued: "Under these circumstances, the materiality of the *ex parte* communications appears to be self-evident from the Deciding Official's admission." *Id.*

¶7        Here, the appellant's strongest argument is that the removal notice states: "This decision . . . takes into consideration the aggravating factors considered by the proposing official in determining an appropriate penalty."  IAF, Tab 1 at 12. While this is a close call given the inclusion of this language in the removal notice, it appears to have been pro forma.  In the hearing before the administrative judge, the deciding official explicitly testified that the proposing official's analysis of the *Douglas* factors did not influence his own analysis, and that instead he believed the proposing official's analysis of the notoriety *Douglas* factor "did not go far enough."  Hearing Compact Disc, Day 1 (HCD 1) (testimony of the deciding official).  The Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so.  *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). It may not overturn an administrative judge's demeanor-based credibility findings merely because it disagrees with those findings.  *Purifoy v. Department of Veterans Affairs*, 838 F.3d 1367, 1372 (Fed. Cir. 2016) (quoting *Haebe*, 288 F.3d at 1299).  The administrative judge "found [the deciding official] a credible, persuasive witness," Initial Decision (ID) at 15, and I believe we must defer to her credibility finding on this issue.

¶8        The majority opinion declares that "[i]t is . . . undisputed that the deciding official considered the notoriety of the offense and the possibility that it could produce negative publicity for the agency as an aggravating factor in his decision to remove the appellant," and "the deciding official's testimony is clear evidence of the materiality of the notoriety of the offense in his decision to remove the appellant."  Yet the relevant question is not whether the deciding official considered the notoriety *Douglas* factor.  (Indeed, the whole point of *Douglas v. Veterans Administration* is that agencies should consider all relevant factors. 5 M.S.P.R. 280, 303-08 (1981)).  It is not even whether that factor was material to

his overall decision. The relevant question is whether the ex parte information was material to the deciding official's decision, which, as noted above, the deciding official testified it was not (and the administrative judge found this testimony credible).

¶9 The deciding official testified that he in fact learned *no* new information from the proposing official's *Douglas* factors worksheet, and that he conducted his own analysis of the *Douglas* factors. HCD 1 (testimony of the deciding official). He thoroughly explained his *Douglas* factors analysis at the hearing, including several mitigating factors in the appellant's favor. *Id.* The initial decision noted that the deciding official "testified at length as to why he regarded the appellant's misconduct as extremely serious." ID at 14. Among other things, the deciding official testified, "This position is one of the most critical positions that [the Department of Veterans Affairs] has. We are dealing directly with service members who are separating because of medical reasons." HCD 1 (testimony of the deciding official). According to the initial decision, the deciding official further testified that the appellant's "misconduct disrupted operations and other employees and clients at the hospital, given the loud and disruptive disturbance she caused[.]" ID at 14. Overall, the administrative judge found that the deciding official "credibly testified as to his reasoned consideration of the relevant factors." ID at 15. Thus, that "it is . . . undisputed that the deciding official considered the notoriety factor," as the majority opinion notes, *supra*, speaks not to the materiality of the ex parte information but rather to the reality that the notoriety *Douglas* factor would be significant to anyone who considered the case—even without the proposing official's *Douglas* factors worksheet. This significantly diminishes the materiality of the worksheet, and I believe the third *Stone* factor weighs in favor of the agency.

¶10 As the majority opinion acknowledged, the court in *Ward* noted that *Stone* factor three "is only one of several enumerated factors and is not the ultimate inquiry[.]" *Ward*, 634 F.3d at 1280 n.2. Indeed, the court in *Stone* rephrased

precisely the ultimate inquiry: "Ultimately, the inquiry of the Board is whether the *ex parte* communication is so substantial and so likely to cause prejudice that no employee can fairly be required to be subjected to a deprivation of property under such circumstances." *Stone*, 179 F.3d at 1377. Given the foregoing, it seems quite clear to me that this case does not demonstrate such a set of facts. I thus would find that the ex parte information was not "new and material" information.

¶11        The majority opinion cites two earlier Board cases for the proposition that an agency is required to inform an appellant that it is considering a factor as an aggravating one before it imposes a removal, regardless of whether a deciding official relies on a proposing official's analysis or considers the factor separately on his own prior to issuing the decision. *Supra*; *Jenkins v. Environmental Protection Agency*, 118 M.S.P.R. 161, ¶ 10 (2012); *Lopes v. Department of the Navy*, 116 M.S.P.R. 470, ¶ 10 (2011). Yet I believe both of those cases are distinguishable from the case at hand. *Lopes* involved past misconduct and prior discipline, which the deciding official considered despite their not being included in the notice of proposed removal. 116 M.S.P.R. 470, ¶ 9-10. The Board applied the *Stone* analysis to conclude that these "portions of *evidence* relied upon by the agency in imposing the penalty" were material. *Id*. at ¶ 10-12 (emphasis added). Here, no new *evidence* was considered, and the reformulation of existing facts in the record was not material for the reasons discussed above. In *Jenkins*, the deciding official relied on an offense from the agency's table of penalties different from the offenses charged in the notice of proposed removal. 118 M.S.P.R. 161, ¶ 9. While this did not introduce new evidence, it did introduce a new charge, apparently central to the deciding official's decision, that the appellant was not on notice of. *Id*. at ¶ 12. In both *Lopes* and *Jenkins*, the aggravating factor stemmed from information not provided to the appellant. Here, by contrast, the proposal letter put the appellant on notice of both the charges and of what made her conduct particularly problematic. That the

problematic nature of the conduct would constitute an aggravating factor was implicit in the notice.

¶12    Even if the ex parte communication is not sufficiently substantial to rise to the level of a due process violation, then "the Board [is] required to run a harm[ful] error analysis to determine whether the procedural error require[s] reversal." *Ward*, 634 F.3d at 1281; *see* 5 U.S.C. § 7701(c)(2)(A). Harmful error is an error by the agency in the application of its procedures that is likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error. *Ward*, 634 F.3d at 1281; 5 C.F.R. § 1201.56(c)(3).

¶13    Here, the fact that the proposing official's *Douglas* analysis was provided to the deciding official and not the appellant was clearly an error. As the Federal Circuit noted in *Ward*: "[I]t is a procedural error, in violation of 5 C.F.R. § 752.404(f), for 'an agency to rely on matters affecting the penalty it imposes without including those matters in the proposal notice'" (citations omitted). *Ward*, 634 F.3d at 1281. That the deciding official cited in his decision letter "the aggravating factors considered by the proposing official in determining an appropriate penalty"—information not provided to the appellant—makes clear the error. IAF, Tab 1 at 12, Tab 5 at 6-12. However, I believe such error was harmless given that the ex parte worksheet contained no new and material information, the appellant was still on notice to answer all relevant charges against her, and the outcome would have been the same even without the ex parte communication.

¶14    Thus, I would affirm as modified the initial decision of the administrative judge, and uphold the appellant's removal.

/s/
_____
Tristan L. Leavitt
Member